```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                        Plaintiff,

-v-

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

                        Defendant.

Case No. 14-CV-936 (KMK)

OPINION AND ORDER

---

KENNETH M. KARAS, District Judge:

## I. BACKGROUND

Plaintiff United States of America, acting on behalf of the United States Environmental Protection Agency ("EPA"), brought the instant Action in February 2014, alleging two counts against Defendant International Business Machines Corporation ("IBM"). (*See* Compl. (Dkt. No. 2).) Both counts arise under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9604, 9606, 9607, and 9613, and both concern allegations of IBM's role in contaminating an area of land in the Town of East Fishkill, Dutchess County, New York (the "Shenandoah Site" or the "Site")). (*See id.* ¶¶ 1, 10.) In general, the Complaint seeks a "judgment . . . for all response costs incurred by the United States through the date of the judgment in connection with the Site," a "declaratory judgment . . . providing that Defendant is jointly and severally liable to the United States for all response costs that will be incurred by the United States at the Site after the date of judgment," and a "judgment . . . ordering Defendant to perform the response actions selected by EPA" in a September 2012 Record of Decision ("ROD"). (*Id.* at 10.)

In April 2014, Plaintiff submitted a Motion asking the Court "to approve as a final judgment [a] proposed Consent Decree for Remedial Design/Remedial Action between the United States of American and [IBM]." (Notice of Mot. (Dkt. No. 6).) Having reviewed Plaintiff's Motion, its accompanying Memorandum of Law, and the proposed Consent Decree, the Court grants Plaintiff's Motion.

## II. DISCUSSION

"[T]he proper standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable . . . ." *U.S. S.E.C. v. Citigroup Global Mkts., Inc.*, — F.3d —, 2014 WL 2486793, at *7 (2d Cir. June 4, 2014). Moreover, "in the event that the consent decree includes injunctive relief," the Court must find that "the public interest would not be disserved." *Id.* (internal quotation marks omitted). "Absent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements, the district court is *required* to enter the order." *Id.* (emphasis added).

### A. The Consent Decree

The Consent Decree settles all of Plaintiff's claims against Defendant in this lawsuit and further covenants that Plaintiff will not "sue or . . . take administrative action against [Defendant]" for similar claims "relating to the Site." (Consent Decree ¶ 83.) It also provides that Defendant "does not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment." (*Id.* at 2.)

In exchange, Defendant agrees to a number of conditions. First, Defendant agrees to reimburse Plaintiff, in full, for $225,000 in "response costs" that EPA has incurred while repairing the Site. (*Id.* ¶ 52.) Second, Defendant agrees to reimburse Plaintiff, in full, for any future response costs that may arise. (*Id.* ¶ 53.) Third, Defendant agrees to "finance and perform" various measures specified in the Consent Decree, the September 2012 ROD, the "Remedial Design/Remedial Action Work Plan" ("RD/RA Work Plan"), and other documents mentioned in the Consent Decree, which measures the EPA has determined to be necessary to repair the Site. (*Id.* ¶¶ 6, 10.) Fourth, Defendant agrees to submit monthly progress reports, and to otherwise cooperate with EPA, to allow ongoing monitoring of Defendant's efforts to comply with the Consent Decree. (*Id.* ¶¶ 14–15, 28–33, 48–49.) Fifth, Defendant agrees to "establish and maintain a performance guarantee, initially in the amount of $2,700,000, for the benefit of EPA" in the event that a "Work Takeover" occurs. (*Id.* ¶¶ 41–47.)[1]

B. Fair and Reasonable

The Second Circuit has instructed courts evaluating the fairness and reasonableness of a consent decree to consider four factors:

> (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind.

*Citigroup Global Mkts.*, 2014 WL 2486793, at *7. When applying these factors, "[t]he primary focus of the inquiry . . . should be on ensuring the consent decree is procedurally proper, using

---

[1] The Consent Decree specifies that a "Work Takeover" occurs if EPA determines that Defendant has "(1) ceased implementation of any portion of the Work, or (2) is seriously or repeatedly deficient or late in its performance of the Work, or (3) is implementing the Work in a manner that may cause an endangerment to human health or the environment." (Consent Decree ¶ 88(a).)

3

objective measures similar to the [four] factors . . . [and] taking care not to infringe on the [federal government's] discretionary authority to settle on a particular set of terms." *Id.*

### 1. Basic Legality

The Court first considers "the basic legality of the decree." *Id.* The Consent Decree satisfies this factor so long as it is within the Court's authority to enter the decree and within Plaintiff's authority to enforce it. *Cf. Benjamin v. Jacobson*, 172 F.3d 144, 158 (2d Cir. 1999) (en banc) (terminating a consent decree pursuant to a statutory provision mandating termination of a decree "that was approved or granted in the absence of" certain statutorily required findings). Here, the Consent Decree satisfies the "basic legality" factor. First, Defendant's consent to pay $225,000 in past-response costs is consistent with the CERCLA provision making Defendant liable for "all costs of removal or remedial action incurred by the United States Government" and for other related costs. *See* 42 U.S.C. § 9607(a)(4)(A). Second, Defendant's agreement to take future remedial action in cooperation with EPA, and the Court's approval of the decree enforcing that agreement, are consistent with the CERCLA provision granting the federal government the authority "to secure such relief as may be necessary to abate [an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility]," and granting the Court "jurisdiction to grant such relief as the public interest and the equities of the case may require." *See* 42 U.S.C. § 9606(a). Furthermore, while the Consent Decree does not require that Defendant admit liability, the statute does not appear to require such an admission, and there is otherwise, in general, "no basis in the law for [a] district court to require an admission of liability as a condition for approving a settlement between the parties." *Citigroup Global Mkts.*, 2014 WL 2486793, at *6. The Consent Decree therefore satisfies the first factor.

### 2. Clarity of Terms

The Court next considers "whether the terms of the decree, including its enforcement mechanism, are clear." *Id.* at *7. By "clear," the Second Circuit appears to mean that the decree "properly define[s]" its key provisions. *See id.* (citing *Angela R. ex rel. Hesselbein v. Clinton*, 999 F.2d 320, 325 (8th Cir. 1993), where the Eighth Circuit found that a district court "abused its discretion in approving a consent decree that did not specifically resolve [certain] enforcement issues"). Here, the Consent Decree is sufficiently specific. The decree itself comprises almost 50 pages, many of which define key terms, (*see* Consent Decree ¶ 4), and outline specific enforcement mechanisms, (*see, e.g., id.* ¶¶ 10, 14, 28, 41, 48–49, 52, 83–98). Moreover, the Consent Decree incorporates other documents, attached as exhibits to the decree, which further specify Defendant's responsibilities under the decree. (*See* Consent Decree Ex. A (ROD); Consent Decree Ex. B (RD/RA Work Plan); *see also* Consent Decree ¶ 4 (defining the "Consent Decree" to mean the Consent Decree "and all appendices attached [t]hereto").) Based on its review of the Consent Decree and the exhibits attached thereto, the Court finds that the terms of the Consent Decree are clear, and that the decree therefore satisfies the second factor.

### 3. Resolution of Claims

The Court next considers "whether the consent decree reflects a resolution of the actual claims in the complaint." *Citigroup Global Mkts.*, 2014 WL 2486793, at *7. As discussed, the Complaint includes two claims for relief—one seeking reimbursement for Plaintiff's past-response costs pursuant to 42 U.S.C. § 9607(a), and one seeking remedial actions from Defendant pursuant to 42 U.S.C. § 9606(a). (*See* Compl. ¶¶ 29–42.) The Consent Decree directly resolves both claims, as it requires Defendant to reimburse EPA for past-response costs

5

and to take certain remedial actions specified in the decree. The Court therefore finds that it satisfies the third factor.

### 4. Improper Collusion or Corruption

The Court finally considers "whether the consent decree is tainted by improper collusion or corruption." *Citigroup Global Mkts.*, 2014 WL 2486793, at *7. Plaintiff represents that the Consent Decree "was negotiated at arm's length, and [that] the parties were represented by experienced counsel." (United States' Mem. of Law in Supp. of Mot. To Approve the Proposed Consent Decree ("Mem.") 8 (Dkt. No. 7).) It further represents that "the Consent Decree was the culmination of an ongoing effort by EPA over more than a decade, and with the direct involvement and participation of IBM . . . , in remediating the Site." (*Id.*) The record supports this account. EPA first intervened at the Site in June 2000, when it immediately took certain remedial actions in response to a request from the New York State Department of Environmental Conservation that it respond to reports of contamination in residential wells. (*Id.* at 4.) EPA then invited Defendant to undertake a Remedial Investigation and Feasibility Study ("RI/FS") at the Site in March 2002. (*Id.* at 5.) As a result of that investigation, EPA issued the ROD in September 2012, wherein EPA outlined a number of measures necessary to remedy the Site. (*Id.* at 5–6.) Then, Defendant retained Groundwater Sciences Corporation to prepare the RD/RA Work Plan, which EPA subsequently approved and which outlines the specific measures Defendant must take to satisfy its remedial obligations under the Consent Decree. (*See* Consent Decree Ex. B.) Finally, on February 21, 2014, EPA published a notice of the proposed Consent Decree in the Federal Register, *see* Notice of Lodging of Proposed Consent Decree Under the Comprehensive Environmental Response, Compensation, and Liability Act, 79 Fed. Reg. 9924-

02 (Feb. 21, 2014), wherein it invited public comment on the Consent Decree, (*see* Mem. 7). EPA did not receive any public comments within the 30-day period specified in the notice. (*Id.*)

In light of this record, the Court finds that the Consent Decree is not tainted by any improper collusion or corruption. It therefore finds that the Consent Decree satisfies the fourth factor. Accordingly, because the Court finds that the Consent Decree satisfies all four factors, it further finds that the decree is fair and reasonable.

### B. Public Interest

Because the Consent Decree includes injunctive relief, the Court "must also consider the public interest in deciding whether to grant the injunction." *See Citigroup Global Mkts.*, 2014 WL 2486793, at *9. In the context of this consideration, however, "[t]he job of determining whether the proposed . . . consent decree best serves the public interest . . . rests squarely with the [federal government], and its decision merits significant deference." *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984)). Although the Court may find that the Consent Decree disserves the public interest if its substantive terms negatively impact that interest (for example, by "barr[ing] private litigants from pursuing their own claims independent of the relief obtained under the consent decree"), the Court "may not . . . find the public interest disserved based on [a] disagreement with [the federal government's] decisions on discretionary matters of policy." *Id.*

Here, Plaintiff, acting on behalf of EPA, submits that the Consent Decree "ensures that the appropriate remediation at the Site will take place." (Mem. 9.) Plaintiff also represents that the Consent Decree's terms "satisfactorily compensate the public, and reasonably balance myriad competing factors, including the strength of the United States' case against IBM, the litigation risks involved in proceeding to trial, and the need to recover funds for cleanup and minimize the

expense of litigation." (*Id.* at 10.) Furthermore, Plaintiff argues that the Consent Decree furthers CERCLA's primary statutory goals of "encourag[ing] prompt and effective responses to hazardous waste releases," "impos[ing] liability on responsible parties," and "encourag[ing] settlements that would reduce the inefficient expenditure of public funds on lengthy litigation." (*Id.* (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 119).) And Plaintiff also argues that the Consent Decree "meets CERCLA's statutory goal of providing final resolution of liability for settling parties," and that it "serves CERCLA's goal of reducing, where possible, the litigation and transaction costs associated with response actions, as well as the public policy favoring settlement to reduce costs to litigants and burdens on the courts." (*Id.*)

Having reviewed the Consent Decree, the Court finds that none of its provisions disserves the public interest. EPA has determined that the remedial actions outlined in the Consent Decree satisfy Defendant's obligation to repair the Site, and the Court finds no reason to disturb the "significant deference" that determination deserves. Furthermore, although the Consent Decree does not require Defendant to admit liability or to acknowledge "an imminent and substantial endangerment to the public health or welfare or the environment," (Consent Decree at 2), the decree does not prevent a private plaintiff from bringing an action against Defendant based on such a theory of liability, (*see id.* ¶ 94 ("Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Each of the Parties expressly reserves any and all rights . . . defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.")). *Cf. Citigroup Global Mkts.*, 2014 WL 2486793, at *10 ("Nor can the district court reject a consent decree on the ground that it fails to provide collateral estoppel assistance to private litigants—

that simply is not the job of the courts."). Finally, as discussed, Plaintiff submitted the Consent Decree to a public-comment period, and nobody filed an objection to the decree. (*See* Mem. 9.) The Court therefore finds that the Consent Decree does not disserve the public interest.

### III. CONCLUSION

In light of the foregoing, the Court finds that "the proposed consent decree is fair and reasonable," and that "the public interest would not be disserved." *Citigroup Global Mkts.*, 2014 WL 2486793, at *7 (internal quotation marks omitted). Accordingly, the Court grants Plaintiff's Motion to approve the Consent Decree as a final judgment in this case. *See id.* ("Absent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements, the district court is *required* to enter the order." (emphasis added)) The Clerk of Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 6.)

SO ORDERED.

Dated: July 2, 2014
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE