IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA              :

                             :

             Plaintiff,        :

                             :     14 Civ. 0936

          v.                :

INTERNATIONAL BUSINESS MACHINES   :
CORPORATION                    :

            Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **CONSENT DECREE FOR REMEDIAL DESIGN/REMEDIAL ACTION**

TABLE OF CONTENTS

I.        BACKGROUND ............................................................................................ 2
II        JURISDICTION ........................................................................................... 3
III.      PARTIES BOUND ....................................................................................... 3
IV.       DEFINITIONS ............................................................................................. 4
V.        GENERAL PROVISIONS............................................................................ 7
VI.       PERFORMANCE OF THE WORK BY SETTLING DEFENDANT..................... 7
VII.      REMEDY REVIEW .................................................................................... 11
VIII.     QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS ........................ 11
IX.       ACCESS AND INSTITUTIONAL CONTROLS ............................................... 13
X.        REPORTING REQUIREMENTS .................................................................. 16
XI.       EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES ......... 17
XII.      PROJECT COORDINATORS ...................................................................... 18
XIII      PERFORMANCE GUARANTEE ................................................................. 19
XIV.      CERTIFICATION OF COMPLETION ........................................................... 23
XV.       EMERGENCY RESPONSE ......................................................................... 25
XVI.      PAYMENTS FOR RESPONSE COSTS ......................................................... 26
XVII.     INDEMNIFICATION AND INSURANCE ..................................................... 28
XVIII.    FORCE MAJEURE ...................................................................................... 29
XIX.      DISPUTE RESOLUTION ............................................................................ 30
XX        STIPULATED PENALTIES ......................................................................... 32
XXI.      COVENANTS BY PLAINTIFF .................................................................... 36
XXII.     COVENANTS BY SETTLING DEFENDANT ................................................. 39
XXIII.    EFFECT OF SETTLEMENT; CONTRIBUTION.............................................. 40
XXIV.     ACCESS TO INFORMATION ..................................................................... 41
XXV.      RETENTION OF RECORDS ....................................................................... 42
XXVI.     NOTICES AND SUBMISSIONS .................................................................. 42
XXVII.    RETENTION OF JURISDICTION ................................................................ 44
XXVIII.   APPENDICES ............................................................................................ 44
XXIX.     COMMUNITY RELATIONS ....................................................................... 44
XXX.      MODIFICATION ....................................................................................... 45
XXXI.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ............................ 45
XXXII.    SIGNATORIES/SERVICE .......................................................................... 45
XXXIII.   FINAL JUDGMENT .................................................................................... 46

# I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Shenandoah Road Groundwater Contamination Superfund Site, Dutchess County, New York, together with accrued interest; and (2) performance of response actions by the defendant at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of New York (the "State") on June 6, 2013 of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Fish and Wildlife Service and the National Oceanic and Atmospheric Administration on June 6, 2013 of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

E.      The defendant that has entered into this Consent Decree ("Settling Defendant") does not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on June 14, 2001, 66 Fed. Reg. 32235.

G.      In response to a release or a substantial threat of a release of hazardous substances at or from the Site, in 2002 Settling Defendant commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

H.      Settling Defendant completed Remedial Investigation ("RI") and Feasibility Study ("FS") Reports on August 27, 2012.

I.      Settling Defendant has also paid certain of EPA's response costs and undertaken removal work at the Site, including excavation and disposal of contaminated soil; installation and monitoring of home water treatment systems; construction of a 7.5-mile water line and water tank to serve 140 residential properties; and construction of a source extraction and treatment system at the Facility, as defined below.

J.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the RI/FS and of the proposed plan for cleanup of the Site on August 29, 2012,

in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Emergency and Remedial Response Division ("ERRD") Director, EPA Region 2, based the selection of the response action.

K.     The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 30, 2012, on which the State had a reasonable opportunity to review and comment and on which the State has given its concurrence. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

L.     Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

M.     Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Defendant shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

N.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the United States and upon Settling Defendant and its successors, and assigns. Any change in ownership or corporate status of Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

3.     Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing Settling Defendant with respect to the Site or the Work, and shall condition all contracts entered

into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.     Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Consent Decree:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675.

"Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXVIII). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"ERRD Director" shall mean the Director of the Emergency Response and Remedial Division, EPA Region 2.

"Facility" shall mean the former location of the computer chip cleaning operations conducted by J.Manne, Inc. located at 7 East Hook Cross Road, as well as portions of 11 East Hook Cross Road and 47 Stone Ridge Lane, Hopewell Junction, NY.

4

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in performing vapor intrusion system monitoring and/or installation of additional systems, maintaining existing vapor intrusion systems, and performing any other activities related to vapor intrusion at the Site in accordance with the ROD; reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree; in overseeing implementation of the Work; or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), XV (Emergency Response), Paragraph 45 (Funding for Work Takeover), and Section XXIX (Community Relations). Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendant has agreed to pay under this Consent Decree that have accrued pursuant to 42 U.S.C. § 9607(a) prior to the Effective Date, but paid after that date.

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at the Site.

"Institutional Controls Implementation and Assurance Plan" or "ICIAP" shall mean the plan for implementing, maintaining, monitoring, and reporting on the Institutional Controls set forth in the ROD, prepared in accordance with the RD/RA Work Plan, as defined below.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, incurred prior to July 1, 2013 but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"NYSDEC" shall mean the New York State Department of Environmental Conservation and any successor departments or agencies of the State.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Manual approved or developed by EPA pursuant to Section VI (Performance of the Work by

5

Settling Defendant) and the RD/RA Work Plan, and maintenance, monitoring, and enforcement of Institutional Controls as provided in the ICIAP.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and Settling Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site from May 1, 2004 through June 30, 2013 plus Interest on all such costs that has accrued pursuant to 42 U.S.C.§ 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action as set forth in the ROD and the RD/RA Work Plan.

"Plaintiff" shall mean the United States.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C.§§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 30, 2012, by the ERRD Director, EPA Region 2, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendant to develop the final plans and specifications for the Remedial Action pursuant to the RD/RA Work Plan attached hereto as Appendix B.

" Remedial Design/Remedial Action Work Plan" or "RD/RA Work Plan" shall mean the document setting forth the plan for Remedial Design and Remedial Action approved by EPA and attached hereto as Appendix B and any modifications thereto.

"Remedial Action" shall mean all activities Settling Defendant is required to perform under the Consent Decree to implement the ROD, in accordance with the approved RD/RA Work Plan, attached hereto as Appendix B, and other plans approved by EPA, including implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, O&M, and the activities required under Section XXV (Retention of Records).

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean International Business Machines Corporation.

"Site" shall mean the Shenandoah Road Groundwater Contamination Superfund Site, which includes a property located at 7 East Hook Cross Road  as well as all areas to which

groundwater contamination has migrated or may migrate from this property, including properties located on portions of Shenandoah Road, Old Shenandoah Road, Seymour Lane, Burbank Road, Jackson Road, Townsend Road, Old Townsend Road, Jaycox Lane, Stone Ridge Lane, Griffin Lane, and East Hook Cross Road, in the Town of East Fishkill, Dutchess County, New York, and generally shown on the map included in Appendix C.

"State" shall mean the State of New York.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C.§ 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C.§ 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.§ 6903(27).

"Work" shall mean all activities and obligations Settling Defendant is required to perform under this Consent Decree, except the activities required under Paragraph 101 (Retention of Records).

## V. GENERAL PROVISIONS

5.  Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the implementation of response actions at the Site by Settling Defendant, to pay response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendant.

6.  Commitments by Settling Defendant. Settling Defendant shall finance and perform the Work in accordance with this Consent Decree, the ROD, the RD/RA Work Plan and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Settling Defendant and approved by EPA pursuant to this Consent Decree. Settling Defendant shall pay the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.

7.  Compliance With Applicable Law. All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the RD/RA Work Plan. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.    Permits.

a.    As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    Settling Defendant may seek relief under the provisions of Section 60 (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8(a) and required for the Work, provided that it has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

VI.    PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

9.    Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VII (Remedy Review), VIII(Quality Assurance, Sampling, and Data Analysis), IX (Access and Institutional Controls), and Section XV (Emergency Response) shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA. Settling Defendant has selected, and EPA hereby authorizes Settling Defendant to proceed regarding hiring of, the following company as Supervising Contractor: Groundwater Sciences Corporation, 560 Route 52, Suite 202, Beacon, NY 12508. The Supervising Contractor, as well as all other contractors and subcontractors who engage in the "practice of engineering" at the Site on behalf of Settling Defendant (as the "practice of engineering" is defined at Section 7201 of the New York State Education Law), must comply with all applicable New York State legal requirements regarding the practice of engineering with the State of New York, including all applicable requirements of the New York State Education Law and Business Corporation Law. If at any time thereafter, Settling Defendant proposes to change its Supervising Contractor, Settling Defendant shall give such notice to EPA and must obtain an authorization to proceed from EPA before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.    If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendant in writing. Settling Defendant shall submit to EPA a list of contractors, including the qualifications of each contractor, which would be acceptable to it within 30 days after receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendant may select any contractor

8

from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days after EPA's authorization to proceed.

        c.     If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendant from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Defendant may seek relief under Section XVIII (Force Majeure).

     10.    <u>Remedial Design/ Remedial Action.</u>

        a.     Settling Defendant shall fully implement and comply with the RD/RA Work Plan attached hereto as Appendix B and incorporated into and enforceable under this Consent Decree. The Work to be performed by Settling Defendant pursuant to this Consent Decree shall at a minimum achieve the requirements of, and be performed in a manner consistent with, the scope of the remedy set forth in the ROD as the term "SCOPE OF THE REMEDY SET FORTH IN THE ROD" is defined in Paragraph 11(b) below, the RD/RA Work Plan, and this Consent Decree.

        b.     Settling Defendant shall continue to implement the Remedial Action until the Performance Standards are achieved. Settling Defendant shall implement O&M for so long thereafter as is required by the ROD, the RD/RA Work Plan and this Consent Decree.

     11.    <u>Modification of RD/RA Work Plan.</u>

        a.     If EPA determines that it is necessary to modify the work specified in the RD/RA Work Plan to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify Settling Defendant of such modification.

        b.     For the purposes of this Paragraph and Paragraphs 10 (Remedial Design/Remedial Action), 48 (Completion of the Remedial Action) and 49 (Completion of the Work) only, the "scope of the remedy set forth in the ROD" is the following components:

- Continued operation and maintenance of the existing source extraction and treatment system at the Facility to address the dense non-aqueous phase liquid source area;

- Natural attenuation of the groundwater plume through the processes of dispersion, dilution, degradation and sorption of volatile organic compounds ("VOCs") in the groundwater plume in order to reduce VOC concentrations to federal and more stringent state maximum contaminant levels or standards;

- Comprehensive monitoring program: <u>Groundwater</u> – It is estimated that 60 monitoring wells and/or FLUTe® intervals would be proposed for sampling. The sampling frequency and well selection are expected to be divided into five-year intervals for the 15-year (source control) and 30-year (MNA) periods. With each five-year interval, the specific frequency of sampling and the number of wells to be sampled are expected to be reduced. <u>Surface water and sediment</u> – It is estimated that five groundwater seep and surface water/sediment sampling locations would be sampled. For each five-year interval

9

for years one to 15, sampling would occur quarterly, semiannually and annually, respectively. From years 16 to 30, sampling is expected to be annually at select locations;

- Institutional controls in the form of existing governmental controls consisting of local laws that limit exposure to contaminated groundwater by restricting the drilling of private wells and their use as a domestic supply within established public water districts, as well as proprietary institutional controls in the form of environmental easements and/or restrictive covenants placed on the Facility property to ensure that no construction or other invasive activities are conducted on the Facility which would interfere with existing remedial components, including the source extraction and treatment system.

- Five year reviews after the initiation of remedial action to ensure that the remedy as selected is protective of human health and environment until cleanup standards are achieved.

     c.     If Settling Defendant objects to the modification it may, within 30 days after EPA's notification, seek dispute resolution under Paragraph 68 (Record Review).

     d.     The RD/RA Work Plan shall be modified: (1) in accordance with the modification issued by EPA; or (2) if Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Defendant shall implement all work required by such modification. Settling Defendant shall incorporate the modification into the RD/RA Work Plan, as appropriate.

     e.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

     12.     Nothing in this Consent Decree or the RD/RA Work Plan constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the RD/RA Work Plan will achieve the Performance Standards.

     13.     <u>Off-Site Shipment of Waste Material</u>.

     a.     Settling Defendant may ship hazardous substances, pollutants, and contaminants from the Site to an off-Site facility only if it verifies, prior to any shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C.§ 9621(d)(3), and 40 C.F.R.§ 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C.§ 9621(d)(3) and 40 C.F.R.§ 300.440.

     b.     Settling Defendant may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, it provides written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Manager. This notice requirement shall not apply to any off-Site shipments when the total quantity of all such shipments will not exceed ten cubic yards. The written notice shall include the following information, if available: (1) the name and location of the receiving facility; (2) the

type and quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation. Settling Defendant also shall notify the state environmental official referenced above and the EPA Project Manager of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility. Settling Defendant shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

## VII. REMEDY REVIEW

14.     Periodic Review. Settling Defendant shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

15.     EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

16.     Opportunity to Comment. Settling Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

17.     Settling Defendant's Obligation To Perform Further Response Actions. If EPA selects further response actions relating to the Site, EPA may require Settling Defendant to perform such further response actions, but only to the extent that the reopener conditions in Paragraph 84 or Paragraph 85 (United States' Pre- and Post-Certification Reservations) are satisfied. Settling Defendant may invoke the procedures set forth in Section 64 (Dispute Resolution) to dispute (a) EPA's determination that the reopener conditions of Paragraph 84 or Paragraph 85 are satisfied, (b) EPA's determination that the Remedial Action is not protective of human health and the environment, or (c) EPA's selection of the further response actions. Disputes pertaining to whether the remedy is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 68 (Record Review).

18.     Submission of Plans. If Settling Defendant is required to perform further response actions pursuant to Paragraph 17, within 30 days of EPA's request, Settling Defendant shall submit a plan for such response action to EPA for approval in accordance with the procedures of Section VI (Performance of the Work by Settling Defendant) and the RD/RA Work Plan. Settling Defendant shall implement the approved plan in accordance with this Consent Decree.

## VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

19.     Quality Assurance.

a.      Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with the *Uniform Federal Policy for Quality Assurance Project Plans* (UFP-QAPP), Parts 1, 2 and 3, EPA-505-B-04-900A, B and C, March

2005, and subsequent amendments to such guidelines upon notification by EPA to Settling Defendant of such amendment. Amended guidelines shall apply only to procedures conducted after such notification.

b.      Settling Defendant has previously submitted to EPA, and EPA has approved, a Quality Assurance Project Plan ("QAPP") that is consistent with the NCP, and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree. Settling Defendant shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree. In addition, Settling Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods that are documented in the "USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by EPA, after opportunity for review and comment by the State, Settling Defendant may use other analytical methods that are as stringent as or more stringent than the Contract Laboratory Program-approved methods. Settling Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program. Settling Defendant shall use only laboratories that have a documented Quality System that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

20.      Upon request, Settling Defendant shall allow split or duplicate samples to be taken by EPA or its authorized representatives. Settling Defendant shall notify EPA not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow Settling Defendant to take split or duplicate samples of any samples it takes as part of Plaintiff's oversight of Settling Defendant's implementation of the Work.

21.      Settling Defendant shall submit to EPA one hard copy and one electronic copy on electronic media of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

22.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

IX. ACCESS AND INSTITUTIONAL CONTROLS

23.     If the Site, or any other real property where access or land/water use restrictions are needed, is owned or controlled by Settling Defendant:

a.     Settling Defendant shall, commencing on the date of lodging of the Consent Decree, provide the United States and its representatives, contractors, and subcontractors, with access at all reasonable times to the Site, or such other real property, to conduct any activity regarding the Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States;

(3)     Conducting investigations regarding contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved QAPP;

(7)     Implementing the Work pursuant to the conditions set forth in *Paragraph 88 (Work Takeover)*;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Defendant's compliance with the Consent *Decree;*

(10)     Determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(11)     Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls and the requirements of the ICIAP.

b.     commencing on the date of lodging of the Consent Decree, Settling Defendant shall not use the Site, or such other real property, in any manner that EPA determines *will pose an unacceptable risk to human health or to the environment due to exposure to Waste* Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action and O&M. The restrictions shall include, but not be limited to: prohibiting *construction or other activities conducted on the property that may interfere with remedial* components, including the source extraction and treatment system.

c.    Settling Defendant shall:

(1)    execute and record in the Dutchess County Clerk's Office, State of New York, Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 23.a., and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 23(b), including, but not limited to, the specific restrictions listed therein and any land/water use restrictions listed in the ICIAP, as further specified in Paragraph 23.c.(2)-(3). The Proprietary Controls shall be granted to one or more of the following persons as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, and/or (iii) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA (and/or the State as appropriate) is a "third-party beneficiary," allowing EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property.

(2)    in accordance with the schedule set forth in the ICIAP, submit to EPA for review and approval regarding such real property: (i) draft Proprietary Controls, in substantially the form attached hereto as Appendix D, that are enforceable under the laws of the State of New York; and (ii) a current title insurance commitment or other evidence of title acceptable to EPA, that shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

(3)    within 30 days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record the Proprietary Controls with the Dutchess County Clerk's Office. Within 30 days of recording the Proprietary Controls, Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

24.    If the Site, which includes the Facility, or any other real property where access and/or land/water use restrictions are needed, is owned or controlled by persons other than any Settling Defendant, Settling Defendant shall:

a.    use best efforts to secure from such persons:

(1)    an agreement to provide access thereto for the United States and Settling Defendant, and their representatives, contractors, and subcontractors, to conduct

14

any activity regarding the Consent Decree including, but not limited to, the activities listed in Paragraph 23.a.;

(2)    an agreement, enforceable by Settling Defendant and the United States, to refrain from using the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action. The agreement shall include, but not be limited to, the land/water use restrictions listed in Paragraph 23.b.; and

(3)    the execution and recordation in the Dutchess County Clerk's Office, State of New York, Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 23.a., and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 23.b., including, but not limited to, the specific restrictions listed therein and any land/water use restrictions listed in the ICIAP, as further specified in Paragraph 23.c.(2)-(3). The Proprietary Controls shall be granted to one or more of the following persons as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) Settling Defendant, and its representatives, and/or (iv) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA is a "third-party beneficiary," allowing EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property. If any Proprietary Controls are granted to Settling Defendant pursuant to this Paragraph 24.a.(3)(iii), then Settling Defendant shall monitor, maintain, report on, and enforce such Proprietary Controls.

b.    in accordance with the schedule set forth in the ICIAP, submit to EPA for review and approval regarding such real property: (i) draft Proprietary Controls, in substantially the form attached hereto as Appendix D, that are enforceable under the laws of the State of New York; and (ii) a current title insurance commitment or other evidence of title acceptable to EPA, which shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

c.    within 15 days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record the Proprietary Controls with the Dutchess County Clerk's Office. Within 30 days of recording the Proprietary Controls, Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, *and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps*. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including final title evidence) shall be prepared in accordance with

15

the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

25.     For purposes of Paragraph 24, "best efforts" includes the payment of reasonable sums of money to obtain access, an agreement to restrict land/water use, Proprietary Controls, and/or an agreement to release or subordinate a prior lien or encumbrance with respect to all property referenced in Paragraph 24, with the exception of the Facility. If within 45 days of EPA's request for Proprietary Controls, Settling Defendant has not: (a) obtained agreements to provide access, restrict land/water use, or record Proprietary Controls, as required by Paragraph 24.a.(1), 24.a.(2) or 24.a.(3); or (b) obtained, pursuant to Paragraphs 23.c.(2) and 24.b., agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Proprietary Controls, Settling Defendant shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendant has taken to attempt to comply with Paragraph 24. The United States may, as it deems appropriate, assist Settling Defendant in obtaining access, agreements to restrict land/water use, Proprietary Controls, or the release or subordination of a prior lien or encumbrance. Settling Defendant shall reimburse the United States under Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, Proprietary Controls, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

26.     Because EPA has determined that Institutional Controls in the form of state or local laws, regulations, ordinances, and/or zoning restrictions are needed to ensure the protectiveness of the remedy selected in the ROD, Settling Defendant shall ensure compliance with such governmental controls through the ICIAP, as provided in the RD/RA Work Plan.

27.     Notwithstanding any provision of the Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

X.  REPORTING REQUIREMENTS

28.     In addition to any other requirement of this Consent Decree, Settling Defendant shall submit to EPA and the State written monthly progress reports that: (a) describe the actions that have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendant or their contractors or agents in the previous month; (c) identify all plans, reports, and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of RD/RA Work Plans, that are scheduled for the next six weeks; (e) include information relevant to any delays in sampling or reporting; (f) include any modifications to the RD/RA Work Plan or other schedules that Settling Defendant has proposed to EPA or that have been approved by EPA; and (g) describe any activities undertaken in support of the Community Relations Plan during the previous month. Settling Defendant shall submit these progress reports to EPA and the State by the tenth day of every month following the

lodging of this Consent Decree until EPA notifies Settling Defendant pursuant to Paragraph 49.b) of Section XIV (Certification of Completion).  If requested by EPA, Settling Defendant shall also provide briefings for EPA to discuss the progress of the Work.

29.     Settling Defendant shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of the RD/RA Work Plan, no later than seven days prior to the performance of the activity.

30.     Upon the occurrence of any event during performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA, 42 U.S.C.§ 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), 42 U.S.C.§ 11004, Settling Defendant shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator nor Alternate EPA Project Coordinator is available, the Chief of the Response and Prevention Branch of the Emergency and Remedial Response Division of EPA, Region 2, at (732) 321-6656, or, if such person or his/her delegate is unavailable, the EPA Region 2 Emergency 24-hour Hot Line at (732) 548-8730.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

31.     Within 20 days after the onset of such event, Settling Defendant shall furnish to EPA a written report, signed by Settling Defendant's Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto.  Within 30 days after the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

32.     Settling Defendant shall submit 1 hard copy and one electronic copy of all plans, reports, data, and other deliverables required by the RD/RA Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  Settling Defendant shall simultaneously submit 1 hard copy and one electronic copy of all such plans, reports, data, and other deliverables to the State.  Upon request by EPA, Settling Defendant shall submit in electronic form all or any portion of any deliverables Settling Defendant is required to submit pursuant to the provisions of this Consent Decree.

33.     All deliverables submitted by Settling Defendant to EPA that purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of Settling Defendant.

XI.  EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

34.     Initial Submissions.

a.     After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (1) approve, in whole or in part, the submission; (2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

b.      EPA also may modify the initial submission to cure deficiencies in the submission if: (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

35.    Resubmissions.  Upon receipt of a notice of disapproval under Paragraph 34.a.(3) or (4), or if required by a notice of approval upon specified conditions under Paragraph 34.a.(2), Settling Defendant shall, within 14 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Defendant to correct the deficiencies; or (e) any combination of the foregoing.

36.    Material Defects.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 34.b.(2) or 35 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 71.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Defendant's submissions under this Section.

37.    Implementation.  Upon approval, approval upon conditions, or modification by EPA under Paragraph 34 (Initial Submissions) or Paragraph 35 (Resubmissions), of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Settling Defendant shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 34 or 35 shall not relieve Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XII. PROJECT COORDINATORS

38.    Within 20 days after lodging this Consent Decree, Settling Defendant and EPA will notify each other, in writing, of the name, address, telephone number and email address of their respective designated Project Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made.  Settling Defendant's Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  Settling Defendant's Project Coordinator shall not be an attorney for Settling Defendant in this matter.  He or she may

18

assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

39.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R. Part 300. EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

40.     EPA's Project Coordinator and Settling Defendant's Project Coordinator will communicate, at a minimum, on a monthly basis either telephonically or in person or at such other frequency as EPA determines is appropriate.

XIII.    PERFORMANCE GUARANTEE

41.     In order to ensure the full and final completion of the Work, Settling Defendant shall establish and maintain a performance guarantee, initially in the amount of $2,700,000, for the benefit of EPA (hereinafter "Estimated Cost of the Work"). The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if Settling Defendant intends to use multiple mechanisms, such multiple mechanisms shall be limited to those set forth in subparagraphs a-d, below, i.e., surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

a.     A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on *federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;*

b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue letters of credit and (2) whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.     A trust fund established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a federal or state agency;

d.     A policy of insurance that (1) provides EPA with acceptable rights as a beneficiary thereof; and (2) is issued by an insurance carrier (i) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (ii) whose insurance operations are regulated and examined by a federal or state agency;

e.     A demonstration that Settling Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a

19

financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction; or

f.      A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (1) a direct or indirect parent company of Settling Defendant, or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

42.     Settling Defendant has selected, and EPA has found satisfactory, an initial performance guarantee of one or more irrevocable letters of credit comprising $2,700,000 pursuant to Paragraph 41(b) in the form attached hereto as Appendix E. Within 30 days after the Effective Date, Settling Defendant shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents attached hereto as Appendix E, and such performance guarantee(s) shall thereupon be fully effective. Within 45 days after the Effective Date, Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer, the United States and EPA in accordance with Section XXVI (Notices and Submissions).

43.     If, at any time after the Effective Date and before issuance of the Certification of Completion of the Work pursuant to Paragraph 49, Settling Defendant provides a performance guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 41(e) or (f), Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these mechanisms unless otherwise provided in this Consent Decree, including but not limited to: (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at: http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf; (b) the annual resubmission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (c) the prompt notification of EPA after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1) and in any event within 90 days after the close of any fiscal year in which such entity no longer satisfies such financial test requirements. For purposes of the performance guarantee mechanisms specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to include the Work; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the terms 'owner" and "operator" shall be deemed to refer to the Settling

20

Defendant making a demonstration under Paragraph 41(e); and the terms "facility" and "hazardous waste facility" shall be deemed to include the Site.

44.     In the event that EPA determines at any time that a performance guarantee provided by Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendant, within 30 days after receipt of notice of EPA's determination or, as the case may be, within 30 days after Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 41 that satisfies all requirements set forth in this Section XIII; provided, however, that if Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that Settling Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 30 days.  On day 30, Settling Defendant shall provide to EPA a status report on its efforts to obtain the revised or alternative form of guarantee.  In seeking approval for a revised or alternative form of performance guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 46(2).  Settling Defendant's inability to post a performance guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendant to complete the Work in strict accordance with the terms of this Consent Decree.

45.     Funding for Work Takeover.  The commencement of any Work Takeover pursuant to Paragraph 88 shall trigger EPA's right to receive the benefit of any performance guarantee(s) provided pursuant to Paragraphs 41. a., c., d., or f., and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.  Upon the commencement of any Work Takeover, if (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 41.e. or Paragraph 41.f., Settling Defendant (or in the case of Paragraph 41.f., the guarantor) shall immediately upon written demand from EPA deposit into a special account within the EPA Hazardous Substance Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the Work as of such date, as determined by EPA.  In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless Settling Defendant

provides a substitute performance guarantee mechanism in accordance with this Section XIII no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee. All EPA Work Takeover costs not reimbursed under this Paragraph shall be reimbursed under Section XVI (Payments for Response Costs).

46.     Modification of Amount and/or Form of Performance Guarantee.

a.     Reduction of Amount of Performance Guarantee. If Settling Defendant believes that the estimated cost of completing the Work has diminished below the amount set forth in Paragraph 41, Settling Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work. Settling Defendant shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work and the basis upon which such cost was calculated. In seeking approval for a reduction in the amount of the performance guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 46.b.(2) for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 46. If EPA decides to accept Settling Defendant's proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in Settling Defendant's written proposal or to some other amount as selected by EPA, EPA will notify Settling Defendant of such decision in writing. Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost of completing the Work set forth in EPA's written decision. After receiving EPA's written decision, Settling Defendant may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 46.b.(2). In the event of a dispute, Settling Defendant may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution). No change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 43 or 47.

b.     Change of Form of Performance Guarantee.

(1)     If, after the Effective Date, Settling Defendant desires to change the form or terms of any performance guarantee(s) provided pursuant to this Section, Settling Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of the performance guarantee provided hereunder. The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 46.b.(2). Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to

22

challenge by Settling Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2)     Settling Defendant shall submit a written proposal for a revised or alternative performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing the Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding. The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendant shall submit such proposed revised or alternative performance guarantee to the EPA Regional Financial Management Officer at the address set forth in Paragraph 105. EPA will notify Settling Defendant in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph. Within 10 days after receiving a written decision approving the proposed revised or alternative performance guarantee, Settling Defendant shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective. Within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee, Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA, the Regional Financial Management Officer, the United States and to EPA at the addresses set forth in Section XXVI (Notices and Submissions).

47.     Release of Performance Guarantee. Settling Defendant shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph. If Settling Defendant receives written notice from EPA in accordance with Paragraph 49 that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendant in writing, Settling Defendant may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section. In the event of a dispute, Settling Defendant may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

XIV. CERTIFICATION OF COMPLETION

48.     Completion of the Remedial Action.

a.     Within 90 days after Settling Defendant concludes that the Remedial Action has been fully performed and the Performance Standards have been achieved, Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Defendant and EPA. If, after the pre-certification inspection, Settling Defendant still believes that the Remedial Action has been fully performed and the Performance Standards have been achieved, it shall submit a written report requesting certification to EPA for approval, with a copy

23

to the State, pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables) within 30 days after the inspection. In the report, a registered professional engineer and Settling Defendant's Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of Settling Defendant or Settling Defendant's Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity for review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards; provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 11. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the RD/RA Work Plan or require Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendant. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants by Plaintiff). Certification of Completion of the Remedial Action shall not affect Settling Defendant's remaining obligations under this Consent Decree.

49.    Completion of the Work.

a.      Within 90 days after Settling Defendant concludes that all phases of the Work, other than any remaining activities required under Section VII (Remedy Review), have

24